FILED
CLERK

3:34 pm, Oct 05, 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------X
DANIEL WINSTON LAMARCO,

                      Petitioner,

       -against-

UNITED STATES OF AMERICA,

                      Respondent.
---------------------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
16-CR-0433 (ADS)
17-CV-2552 (ADS)

**APPEARANCES:**

**Law Office of Robert J. Del Col, Esq.**
*Attorney for the Petitioner*
1038 West Jericho Turnpike
Smithtown, New York 11787
      By: Robert J. Del Col, Esq.

**United States Attorney's Office, Eastern District of New York**
*Attorneys for the Respondent*
271 Cadman Plaza East
Brooklyn, New York 11201
      By: Brendan G. King, Assistant U.S. Attorney

**SPATT, District Judge.**

On August 19, 2016, Daniel Winston LaMarco (the "Petitioner") pled guilty to one count of wire fraud in violation of 18 U.S.C. § 1343 and one count of commodities fraud in violation of 7 U.S.C. § 60(1). Pursuant to a Plea Agreement, the Petitioner waived his right to file an appeal or otherwise challenge his conviction or sentence via 18 U.S.C. § 2255 if the Court sentenced him to a term of imprisonment of eighty seven (87) months or less. On February 3, 2017, the Court imposed a forty two (42) month imprisonment sentence.

The Petitioner, through counsel, moves pursuant to § 2255 to vacate his conviction and sentence on multiple grounds, including violations of the Petitioner's right to effective assistance of counsel and contentions of actual innocence. In addition, the Petitioner requests an evidentiary hearing to further develop his case. For the reasons set forth below, the Petitioner's motion is denied in its entirety.

## I. BACKGROUND

The Court assumes familiarity with the facts and procedural history of the case but proceeds to summarize the relevant details.

In 2011, the Petitioner began receiving sums of currency to invest on behalf of investors, acting as a commodity pool operator. (See Information, Dkt. No. 38-1 ¶¶ 3-11.) Upon receiving these investments, the Petitioner e-mailed the investors "via interstate wires monthly Excel statements" that "purported to provide the [investors] with a monthly statement of account activity including profits, losses, and net account balances." (Plea Tr., Dkt. No. 38-3, 28:4-28:12.) However, from January 2011 through March 2016, the Petitioner was acting in a manner to defraud these investors. To further his fraudulent scheme he "e-mailed investors monthly statements that willfully, falsely reported that [their] investments were increasing in value, when, in fact, the investments were decreasing in value." (Plea Tr. 26:3-26:11.)

The Petitioner hired Robert Gottlieb, Esq. as counsel in February 2016. (See Resp. Opp'n. Br., Dkt. No. 38, at 6.) Following the advice of counsel, the abovementioned conduct was brought to the attention of the Government and plea negotiations ensued. Ultimately, the Petitioner entered into a Plea Agreement with the Government, agreeing to plead guilty to a two-count Information, charging one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of commodities fraud, in violation of 7 U.S.C. § 60(1). (See Plea Agmt., Dkt. No. 28-5, ¶

1.)  In the Plea Agreement, the Petitioner stipulated to the Sentencing Guidelines calculation and restitution amount, waived a <u>Fatico</u> Hearing, and "agree[d] not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 87 months or below." (Plea Agmt. ¶¶ 2, 4.)

On August 19, 2016, a plea proceeding took place before Magistrate Judge Gary R. Brown, during which Judge Brown confirmed that the Petitioner was waiving his right to indictment, that he was competent to proceed with a guilty plea, and that the Petitioner both read and understood the Information.  (Plea Tr. 6:18-11:12.)  Additionally, Judge Brown reviewed the constitutional rights the Petitioner was forfeiting by choosing to enter a guilty plea.  (Plea Tr. 11:14-13:23.)  The Plea Agreement was reviewed, during which the Petitioner confirmed that he understood its contents, particularly the waiver of his right to appeal or collaterally attack his conviction and sentence if sentenced to eighty seven (87) months or less.  (Plea Tr. 14:8-18:4.)  Judge Brown confirmed that the Petitioner understood that if the Petitioner proceeded to trial, the Government had the burden of proof and the Government explained the elements of the crimes the Petitioner was pleading guilty to, stating:

> With respect to wire fraud, there are three elements.  First, that there was a scheme or artifice to defraud or obtain money or property by materially false and fraudulent pretenses, representations, or promises as alleged in the indictment.  Second, that the Defendant knowingly and willfully participated in this scheme or artifice to defraud with knowledge of its fraudulent nature and with the specific intent to defraud.  And third, that in the execution of the scheme, the Defendant used or caused the use of the mails or a private interstate carrier or interstate wires as specified in the indictment.  With respect to count 2, Your Honor, the commodit[ies] fraud count, the elements are as follows.  First, that there was a scheme or artifice to defraud by a commodity pool operator to defraud any client or participant in the commodity pool.  Second, that the Defendant knowingly and willfully participated in the

scheme and artifice to defraud.  And third, that in the execution of the scheme, the Defendant used or caused to be used a means in instrumentality of interstate commerce.

(Plea Tr. 18:11-19:5.)  The Petitioner's sentencing exposure was explained, during which Judge Brown confirmed that the Petitioner knew that he was facing a maximum sentence of twenty (20) years imprisonment for the wire fraud charge, which could run consecutively with a statutory maximum term of ten (10) years imprisonment for the commodities fraud charge.  (Plea Tr. 21:15-21:23.)  Judge Brown emphasized the following:

| | |
|---|---|
| THE COURT: | [T]he only guarantee you have here is the statutory maximum, which you and I already discussed, which is 30 years.  That's the only guarantee here.  Do you understand that? |
| MR. LAMARCO: | Yes, Your Honor. |
| * | *              * |
| THE COURT: | All right.  Do you realize that if the sentence is more severe that you expected . . . you would still be bound by your guilty plea and you will not be permitted to withdraw?  Do you understand? |
| MR. LAMARCO: | Yes, Your Honor. |

(Plea Tr. 23:11-24:4.)  Further, the Petitioner indicated that he was satisfied with his counsel's representation, that he wished to enter a guilty plea to the information, and that he was entering his plea voluntarily and of his own free will.  (Plea Tr. 24:16-25:16.)  During this exchange, the following occurred:

| | |
|---|---|
| THE COURT: | Other than the agreement with the Government as stated on the record and contained in the written plea agreement, has anyone made you any promises that cause you to plead guilty? |

| MR. LAMARCO: | No, Your Honor. |
| THE COURT: | Has anyone made you a promise as to what your sentence will be? |
| MR. LAMARCO: | No, Your Honor. |
| THE COURT: | Understand that it is a lawyer's job to give you an estimate, tell you what he thinks might happen. But there's a big difference between an estimate and a promise. Do you understand that? |
| MR. LAMARCO: | Yes, Your Honor. |

(Plea Tr. 25:5-25:16.) Subsequently, the Petitioner proceeded with a factual allocution, during which he admitted:

> On count 1, between approximately January 2011 and March 2016, within the Eastern District of New York, I knowingly and intentionally devised a scheme to defraud investors and to obtain money from them by means of materially false and fraudulent pretenses and representations. For the purpose of executing such scheme, I e-mailed investors monthly statements that willfully, falsely reported that the investments were increasing in value when, in fact, the investments were decreasing in value.
>
> *         *         *
>
> Count 2, between approximately January 2011 and March 2016, within the Eastern District of New York, while I acted as a commodity pool operator, I knowingly and willfully, by use of electronic mail communications to parties both within New York State and outside of New York State, directly and indirectly employed devices, schemes, and artifices to defraud investors engaged in transactions, practices in courses of business which operated as a fraud, and deceit upon investors by sending monthly statements to investors, falsely reporting the performance of their investments in the commodity pool

(Plea Tr. 26:3-26:22.)  Assistant United States Attorney Mark E. Bini, on behalf of the

Government, then placed on offer of proof on the record, stating the following:

MR. BINI:    In or about January of 2011, the Defendant, Daniel Winston Lamarco, began acquiring investors whose money he indicated would be invested in the foreign exchange markets. And with those investors, of which Lamarco eventually attracted approximately 13, the Defendant gave them a memorandum of offering that indicated that their funds would be placed in a commodity pool run by his company.  Consistent with that memorandum of offering, Lamarco e-mailed the victims via interstate wires monthly Excel statements. And those monthly statements purported to provide the victims with a monthly statement of account activity including profits, losses, and net account balances.  Beginning in 2012, the victims' investments began depreciating in value.  Rather than report the losses and the lower net account balances for the victims, however, the Defendant began e-mailing false monthly Excel statements to the victims that represented that their accounts had increased in value, showing profits rather than losses.   The false monthly Excel statements both attracted new victims who were hoping to receive the positive returns Lamarco claimed to be earning and kept existing victims from withdrawing their funds from Lamarco's management.   By March 2016, Lamarco stopped e-mailing the monthly Excel statements to the victims and did not respond to e-mail and phone inquiries from the victims regarding their investments. And in fact, by that time, the Defendant had lost virtually all of the . . .victims' [ ] remaining money, totaling approximately $862,600.  And the testimony and evidence for the Government would come from the victims themselves, who received those monthly Excel statements, and would include the monthly Excel statements with the false results and the actual results - - the actual

|                | performance showing how the Defendant's investments were actually performing during that time period. |
|----------------|------------------------------------------------------------------------------------------------------|
| THE COURT:     | Okay. Counsel, anything else you want to add?                                                          |
| MR. BINI:      | Just that the e-mail communications that the Defendant had at that time included e-mail communications both to victims inside the State of New York and outside the State of New York. And so he e-mailed in interstate commerce to communicate with certain of the victims who were outside of New York because the Defendant was primarily based here on Long Island. |

(Plea Tr. 28:1-29:18.) Satisfied with the allocution, Judge Brown recommended Judge Spatt accept the Petitioner's guilty plea and adjourned the matter for sentencing. (Plea Tr. 29:22-30:2.)

Following objections from both the Government and defense counsel, the Probation Department submitted its Presentence Investigation Report ("PSR") that assigned the Petitioner a total offense level of twenty six (26), with a Criminal History Category I; the statutory maximum sentence was twenty (20) years as to the wire fraud charge and ten (10) years as to the commodities fraud charge. Thus, the Sentencing Guidelines range was sixty three (63) to seventy eight (78) months. (See Sen. Tr., Dkt. No. 38-8, 25:15-28:13.) On January 26, 2017, defense counsel filed a sentencing memorandum, arguing for a sentence of probation, asking the Court to consider "(1) Mr. LaMarco self-reporting to the Government; (2) the substantial amount of his personal resources he invested back into investor accounts in an effort to recoup losses and make distributions to them; (3) that at least one of the investors has written a letter on his behalf requesting a non-incarceratory sentence so that Mr. LaMarco is able to work toward active

repayment to investors; (4) the impact to his children; (5) his background and prior service in the United States military; (6) and his personal background." (See Def. Sen. Memo., Dkt. No. 38-6, at 6.) The Government responded by submitting a sentencing memorandum, in which they argued for an imprisonment sentence between the Sentencing Guidelines range of 63-78 months of imprisonment "because such a sentence is appropriate to 'reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.'" (See Gov't. Sen. Memo., Dkt. No. 38-7, at 5 (citing 18 U.S.C. § 3553(a)(2)(A)).)

On February 3, 2017, the Petitioner returned to this Court for the purposes of sentencing. At the outset, the Court explained that in determining the appropriate sentence it considered the casefile, the PSR and its addendums, letters from defense counsel, the Government, and victims. (Sen. Tr. 3:16-4:4.) After confirming that there were no errors in the PSR, the Court ensured that the Petitioner was satisfied with counsel's representation. (Sen. Tr. 4:8-5:3.) Defense counsel then made a statement on the Petitioner's behalf, again advocating for a probationary sentence, emphasizing that the Petitioner accepted responsibility for his conduct and that "his criminal conduct throughout was not to reap a financial windfall for himself," but rather was in an attempt to recoup the losses of the victims. (Sen. Tr. 5:10-15:23.) The Petitioner made a statement on behalf of himself, expressing remorse for his conduct and accepting responsibility for his criminal conduct. (Sen. Tr. 16:4-17:18.) The Government then argued for a sentence within the Sentencing Guidelines range, contending that an incarceratory sentence is appropriate due to the damage the Petitioner caused to his victims, and that the Sentencing Guidelines range took into consideration the Petitioner's acceptance of responsibility. (Sen. Tr. 17:22-20:16.) Some of the Petitioner's victims spoke at the sentencing, explaining their financial losses and how the Petitioner solicited them to invest. (Sen. Tr. 21:17-25:13.)

The Court then explained that it fully considered the factors laid out in 18 U.S.C. § 3553(a) when determining sentence, stating in pertinent part:

> The court must take into consideration all of these [18 U.S.C. § 3553(a)] factors, the seriousness of the crime, the 13 friends he defrauded, the amount of money involved, $800-some-odd thousand, the fact that he lied about this for years and submitted phony, false monthly statements, and on the good side he never was in trouble before.

(Sen. Tr. 28:24-31:16.)  Ultimately, this Court sentenced the Petitioner to a below guidelines term of imprisonment of forty two (42) months of imprisonment, followed by three (3) years of supervised release, and a restitution amount of $872,600.  (Sen. Tr. 31:20-33:10.)

On March 3, 2017, the Petitioner, through counsel, filed a notice to appeal his conviction and sentence, which is presently being held in abeyance.  On April 28, 2017, the Petitioner, through counsel, filed a petition to vacate his conviction and sentence pursuant to 18 U.S.C. § 2255.  (See Pet., Dkt. No. 28, at 1-12.)  In the petition, the Petitioner raised multiple grounds of ineffective assistance of counsel, arguing that:

> Counsel failed to explain or explore potential defenses, failed to discuss or explain potential criminal liability, failed to explore or examine jurisdiction and venue, failed to discuss or explore potential trial strategy, [ ] [f]ailed to correct loss calculation, failed to preserve Fatico hearing, failed to correct number of victim, misinformed [the Petitioner] about sentence promising probation, not jail, [ ] failed to correct record[,] [ ] allowed misstatement of fact to be spread on the record, which was relied upon by the court when imposing sentence.

(Pet. at 4.)  In addition, the Petitioner now collaterally attacks his conviction and sentence, arguing that this Court lacked jurisdiction to consider the matter and that he was actually innocent of the crimes he plead guilty to.  (See Pet. at 5-6.)  Regarding the Petitioner's actual innocence claim, he argues that:

> Defendant did not possess the requisite capacity to be held accountable inasmuch as he was in constant depression and was suicidal. Defendant never intended to defraud anyone and never diverted, stole, misappropriated, or misused funds, or any financial gain whatsoever. Defendant did not employ any artifice to solicit contributions, nor did he misrepresent the facts at the time other people joined the pool.

(Pet. at 6.)

The Government opposes the petition, contending that the Petitioner's claims are entirely without merit and are contradicted by the underlying record (See Resp. Opp'n. Br. at 11-15.) Included with the Government's response is an affirmation from the prior defense counsel in which he responds to the Petitioner's claims. (See Def. Counsel Aff., Dkt. No. 38-10.) Defense counsel states that the Petitioner's choice to plead guilty came after considerable investigation of the matter; a full consideration of the benefit to accepting responsibility by reaching out to the Government and negotiating an advantageous plea; and during this time, the victims of the scheme were threatening to file complaints. (Def. Counsel Aff. at 1-3.) In response to the Petitioner's contentions that he was promised a non-jail sentence, defense counsel stated that he never "suggested at any time that a court would sentence [the Petitioner] to probation. We certainly advised him that we would do everything possible to convince the Court not to impose a prison sentence but that, ultimately, under the U.S. Sentencing Guidelines applicable to his case, a term of imprisonment was possible." (Def. Counsel Aff. at 2.)

On April 18, 2018, the Petitioner filed a response in further support of his Section 2255 petition. (See Pet.r.'s Resp. Br., Dkt. No. 39, at 1-13.) On July 30, 2018, the Petitioner filed a letter asking the Court to grant an evidentiary hearing to resolve his claims. (See Pet.r.'s Letter, Dkt. No. 40, at 1-2.) In addition, on August 13, 2018, the Petitioner filed a supplemental addendum to the Section 2255 petition, restating his grounds for ineffective assistance of counsel

and claiming that his sentence was improperly enhanced.  (See Pet.r.'s Supp. Addendum, Dkt.

No. 41, at 1-2.)

## II. DISCUSSION

### A. The Legal Standard as to a Writ of Habeas Corpus Pursuant to § 2255

28 U.S.C. § 2255 provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  To obtain relief under § 2255, a petitioner must demonstrate "a constitutional

error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a

fundamental defect which inherently results in a complete miscarriage of justice."  Cuoco v.

United States, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks and citations omitted).

The Supreme Court has held that "to obtain collateral relief a prisoner must clear a significantly

higher hurdle than would exist on direct appeal."  United States v. Frady, 456 U.S. 152, 166, 102

S. Ct. 1584, 1593, 71 L. Ed. 2d 816 (1982).  The discretion to grant relief under § 2255 is to be

exercised sparingly, for such applications "are in tension with society's strong interest in the

finality of criminal convictions."  Elize v. United States, No. 02-CV-1350 (NGG), 2008 WL

4425286, at *5 (E.D.N.Y. Sept. 30, 2008) (internal quotation marks and citation omitted); see

also Brecht v. Abrahamson, 507 U.S. 619, 633-34, 113 S. Ct. 1710, 1719-20, 123 L. Ed. 2d 353

(1993).

**B. As to the Petitioner's Waiver**

It is well settled that appeal waivers are presumptively enforceable.  See Sanford v. United States, 841 F.3d 578, 580 (2d Cir. 2016) (per curiam).  In other words, "[i]t is by now well established that a knowing and voluntary waiver of the right to appeal is generally enforceable."  United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001); see also Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) (determining that waivers of collateral attack under § 2255 are enforceable).  Accordingly, "[i]n no circumstance . . . may a [petitioner] who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless."  United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993).  However, "such waivers are strictly and narrowly construed against the government, in recognition of its greater bargaining power in negotiating and the fact that the government usually drafts plea agreements."  Yushuvayev v. United States, 532 F. Supp. 2d 455, 468 (E.D.N.Y. 2008).

The Second Circuit has provided narrow exceptions to the general enforceability of waivers, including:

> (1) when the waiver was not made knowingly, voluntarily, and competently, (2) when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, (3) when the government breached the plea agreement, or (4) when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus.

Sanford, 841 F.3d at 580 (quoting United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000)).

The Court turns to the underlying record to determine whether the Petitioner's appeal waiver is enforceable, noting that federal courts rely on defendants' sworn statements during guilty plea allocutions when analyzing the validity of such waivers.  See Salerno v. Berbary, 389 F. Supp. 2d 480, 484 (W.D.N.Y. 2005).  These sworn statements "carr[y] such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony." United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001).

In the instant case, after being sworn in, the Petitioner unequivocally stated that he had reviewed the Plea Agreement with counsel; that he understood the contents of the Plea Agreement; and accepted the terms of the Plea Agreement in their entirety.  (Plea Tr. 14:8-18:4.) Considering the record of the plea proceeding, the Court finds that the Petitioner's appeal waiver was made knowingly, voluntarily, and is in full effect.  The Petitioner received the benefits of the Plea Agreement and was sentenced to a term of imprisonment within the scope of said waiver. Accordingly, his agreement not to challenge his conviction or sentence pursuant to § 2255 bars this collateral attack on his conviction and sentence, subject to the limited exceptions provided above.

## C. As to the Petitioner's Guilty Plea

Additionally, as a threshold matter, the Petitioner entered a guilty plea in this matter and to the extent that the Petitioner's grounds for relief do not relate to the validity of the plea itself, but are veiled attacks on antecedent constitutional violations, relief under Section 2255 is precluded.  Generally, a guilty plea "conclusively resolves the question of factual guilt support the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue." United States v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006).  Therefore, if a

petitioner has validly admitted guilt, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." <u>Tollett v. Henderson</u>, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973). Accordingly "'[t]he only proper focus of a federal habeas inquiry in such a situation is the voluntary and intelligent character of the guilty plea.'" <u>Amparo v. Henderson</u>, No. CV 86-4310, 1989 WL 126831, at *2 (E.D.N.Y. Oct. 18, 1989) (quoting <u>Isaraphanich v. United States</u>, 632 F. Supp. 1531, 1533 (SDNY 1986)).

The standard for considering whether a guilty plea is valid is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" <u>Hill v. Lockhart</u>, 474 U.S. 52, 56, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985) (quoting <u>North Carolina v. Alford</u>, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970)). "A plea is considered 'intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a rudimentary way,' and it is considered 'voluntary if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weight his options rationally.'" <u>Manzullo v. New York</u>, No. 07 CV 744(SJF), 2010 WL 1292302, at *5 (E.D.N.Y. Mar. 29, 2010) (quoting <u>Miller v. Angliker</u>, 848 F.2d 1312, 1320 (2d Cir. 1988)).

Similar to the Court's finding regarding the validity of the Petitioner's appeal waiver, the Court finds that the Petitioner's guilty plea represents a knowing and voluntary choice. During the plea proceeding the Petitioner indicated that he had not been threatened or coerced into entering a guilty plea; that he understood the consequences of choosing to plead guilty; and that he was in fact guilty of the charges. (Plea Tr. 11:14-13:23, 21:15-21:23, 24:16-26:22.) As such,

the Petitioner entered a valid guilty plea and any attempts at challenging pre-plea violations are barred by the valid plea. See Tollett, 411 U.S. at 267, 93 S. Ct. at 1608.

## D. As to Ineffective Assistance of Counsel

The Court notes that "[c]laims of ineffective assistance of counsel can survive § 2255 waivers, but only when the claim relates to the negotiation and entry of a plea or sentencing agreement." United States v. Cano, 494 F. Supp. 2d 243, 248 (S.D.N.Y. 2007). Thus, the Petitioner's general attacks on his sentence and on pre-plea events not related to the negotiation of his guilty plea are barred by the appeal waiver. In any event, assuming that the Petitioner's grounds for ineffective assistance of counsel survive the § 2255 waiver, the Court finds them to be meritless. Therefore, the Court proceeds to discuss the legal standard for reviewing such claims before addressing the substance of each claim. For the purposes of this order, the Court will address the ineffective assistance of counsel claims in the following manner: (1) failure to explore defenses, failure to explain criminal liability, and failure to discuss trial strategy as the Pre-Plea Claims; (2) failure to examine jurisdiction, failure to preserve a Fatico hearing, and misinformed about potential sentence as the Guilty Plea Claims; and (3) failure to correct loss amount, failure to correct the number of victims, and allowed misstatements to remain on the record as the Post-Plea Claims.

To establish ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) he was prejudiced by counsel's deficient performance. See Strickland v. Washington, 466 U.S. 668, 688-92, 104 S. Ct. 2052. 2064-67, 80 L. Ed. 2d 674 (1984). As to the first prong of the Strickland test, counsel's representation is subject to an objective standard of reasonableness, and is accorded deference in light of the "range of

legitimate decisions" that accompanies the various circumstances encountered by counsel. Id. at 688-89, 104 S. Ct. at 2065. Reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance, bearing in mind that [t]here are countless ways to provide effective assistance in any given case and that [e]ven the best criminal defense attorneys would not defend a particular client in the same way." United States v. Aguirre, 912 F.3d 555, 560 (2d Cir. 1990) (internal quotation marks omitted) (citing Strickland, 466 U.S. at 689, 104 S. Ct. at 2065).

As to the second prong of Strickland analysis, the Petitioner must demonstrate that, but for the deficient performance, there is a reasonable probability that the result would have been different. Strickland, 466 U.S. at 694, 104 S. Ct. at 2065. More is required than a mere showing "that the errors had some conceivable effect on the outcome of the proceeding," as "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. at 693, 104 S. Ct. at 2067.

As the Petitioner plead guilty, "Strickland's prejudice prong requires [the Petitioner] to demonstrate a reasonable probability that, 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Munson v. Rock, 507 Fed. Appx. 53, 56 (2d Cir. 2013) (quoting Hill, 474 U.S. at 59, 106 S. Ct. at 370). Generally, "'no prejudice exists when a plea agreement lessens the severity of the sentence defendant would have if convicted at trial.'" Padilla v. Keane, 331 F. Supp. 2d 209, 217 (S.D.N.Y. 2004) (quoting Feliz v. United States, Nos. 01 Civ 5544(JFK), 00 CR 53(JFK), 2002 WL 1964347, at *7 (S.D.N.Y. Aug 22, 2002)). In addition, "[i]n the context of sentencing, the petitioner must show that but for counsel's ineffectiveness, there is a reasonable probability that the sentence imposed would have been different." Garafola v. United States, 909 F. Supp 2d 313, 331 (S.D.N.Y. 2012).

## 1. As to the Pre-Plea Claims

The Petitioner contends that he received ineffective assistance of counsel because his attorney "failed to explain or explore potential defenses, failed to discuss or explain potential criminal liability . . . and failed to discuss or explore potential trial strategy." (Pet at 4.) Though the Petitioner raises these as separate grounds of ineffective assistance of counsel, the Court addresses them together, finding them to be both barred by the Petitioner's valid guilty plea and to be entirely without merit.

The Court finds that the abovementioned attacks on counsel's representation all amount to complaints of counsel's pre-trial investigation and strategy. Of course, "[d]efense counsel has a 'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" Rosario v. Ercole, 601 F.3d 118, 130 (2d Cir. 2010) (quoting Wiggins v. Smith, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535, 156 L. Ed. 2d 471 (2003)). However, a reasonable investigation does not "compel defense counsel to investigate comprehensively every possible lead or defense or to scour the globe on the off-chance something will turn up." Greiner v. Wells, 417 F.3d 305, 321 (2d Cir. 2005) (internal quotation marks and citations omitted). "Post-hoc complaints about the strategy or tactics employed by trial counsel, or complaints that trial counsel did not conduct a sufficiently vigorous pretrial investigation, are typically found to be insufficient to satisfy Strickland." Agyekum v. United States, 01 CIV 5808 (RWS), 2002 WL 10000950, at *5 (S.D.N.Y. May 16, 2002). Further, "a court reviewing a claim for ineffective assistance of counsel is not permitted to 'use hindsight to second guess [counsel's] strategy choices.'" Baran v. United States, 160 F. Supp. 3d 591, 596 (S.D.N.Y. 2016) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)).

The Court is not convinced that any of the abovementioned claims amount to deficient performance. However, even if counsel's actions were inadequate, the Petitioner has failed to demonstrate that he was prejudiced by such conduct. The Petitioner frames his prejudice argument by claiming that if not for his counsel's errors "it is easy to conclude that [he] would not have been criminally charged in the first place." (See Pet.r.'s Memo. of Law, Dkt. No. 28-1, at 24.) The Court is not convinced. Rather, defense counsel was able to negotiate an advantageous plea, allowing the Petitioner to receive lenience due to accepting responsibility and avoiding a potential thirty-year prison sentence if convicted at trial.

Moreover, the Petitioner has not successfully demonstrated that if counsel had not committed these alleged errors that he would not have plead guilty. "Where a defendant . . . has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on the defendant's sworn statements and hold him to them." Padilla v. Keane, 331 F. Supp. 2d 209, 217 (S.D.N.Y. 2004). "Similarly, where the defendant secured a significant strategic benefit by pleading guilty, courts are generally less likely to suspect an involuntary or misguided decision to plead." Id. Therefore, as the Petitioner received the significant benefits of the Plea Agreement and validly entered the plea, the Court finds that he has not demonstrated that he received ineffective assistance of counsel.

**2. As to the Guilty Plea Claims**

The Petitioner claims that his attorney provided ineffective representation as he "failed to explore or examine jurisdiction, . . . failed to preserve Fatico hearing, [and] misinformed [the Petitioner] about sentence promising probation." (Pet. at 4.) The Court addresses each of these grounds and finds them meritless.

First, considering the Petitioner's arguments regarding jurisdiction, he raises this both as a ground for ineffective assistance of counsel relief and as an independent claim arguing that this Court lacked jurisdiction as "[t]here were no contributions from anyone outside New York State that were a product of any artifice or scheme to defraud." (Pet. at 4-5.) The Court discusses the jurisdiction related arguments together, denying them in their entirety. The Petitioner's sworn statements during his guilty plea allocution directly contradict the Petitioner's belated claim that there were no contributions outside New York for the scheme to defraud. Particularly, in his allocution to Count Two of the Information, the Petitioner admitted to "knowingly and willfully, by use of electronic mail communications to parties both within New York State and outside of New York State, directly and indirectly employed devices, schemes, and artifices to defraud investors engaged in transactions, practices in courses of business which operated as a fraud, and deceit upon investors by sending monthly statements to investors, falsely reporting the performance of their investments in the commodity pool." (Plea Tr. 26:15-26:22.)

The Court notes that "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977). Such statements are conclusive absent some credible reasonable for departing from them. United States v. Gonzalez, 970 F.2d 1095, 1101 (2d Cir. 1992). The Petitioner's belated claims regarding a lack of jurisdiction are contradicted by his concessions on the record and he has not provided a credible reason to depart from these sworn statements. In addition, the Petitioner's contention that counsel failed to explore jurisdiction is entirely conclusory. "Self-serving conclusory allegations . . . are insufficient to establish ineffective assistance of counsel." Blumenberg v. United States, No. 05 Civ. 9416(JGK), 2009 WL 3459185, at *3 (S.D.N.Y. Oct. 27, 2009) (citing United States v. Torres, 129 F.3d 710, 715-17 (2d Cir. 1997)); see also

Hernandez v. Larkin, No. 12 Civ. 8090(AJN)(SN), 2013 WL 4453316, at *12 (S.D.N.Y. Aug 19, 2013) ("A self-serving post-conviction statements does not, standing alone, establish prejudice.")

Turning to the Petitioner's claim that he received ineffective assistance of counsel when his attorney waived a Fatico hearing as part of the Plea Agreement, the Court finds that this does not rise to the level of ineffective assistance of counsel. Rather, the Court finds that the Petitioner obtained a considerably reduced sentence pursuant to the Plea Agreement and he cannot demonstrate that waiving a Fatico hearing to obtain this agreement constitutes objectively unreasonable performance. Further, the Petitioner confirmed on the record that he had reviewed the Plea Agreement with counsel and understood its contents, which included the waiver of the Fatico hearing. (See Plea Tr. 14:8-17:8.) However, even if waiving a Fatico hearing was objectively unreasonable, the Petitioner again has not demonstrated prejudice as he received a significant benefit from executing this Plea Agreement as negotiated.

Further, the Petitioner argues that he received ineffective assistance of counsel as he entered the guilty plea based on his attorney's representation that "probation was a certainty." (Pet.r.'s Memo. of Law at 4, 18-19.) In the Petitioner's affirmation he states that "I was most definitely led to believe, and did believe, that no matter what was said in Court, and no matter what appeared in the plea agreement, I was getting a sentence of probation . . . maybe home confinement." (Pet.r.'s Aff. at 1-2.) The Government opposes this claim; and defense counsel contends in his affirmation that he did not "promise[] . . . or suggest[] at any time that a court would sentence [the Petitioner] to probation." (Def. Counsel Aff. at 2.)

The Court finds that the Petitioner's claim that he was misadvised regarding a guarantee of a non-incarceratory sentence is incredible, especially considering the record of the plea proceeding. The Court explained, in detail, the potential sentences the Petitioner could receive,

explaining that the maximum jail term he could receive based on his guilty plea was thirty years of incarceration:

> THE COURT: What that means is the only guarantee you have here is the statutory maximum, which you and I already discussed, which is 30 years. That's the only guarantee here. Do you understand that?
>
> MR. LAMARCO: Yes, Your Honor.
>
> \*                    \*                    \*
>
> THE COURT: Has anyone made you a promise as to what your sentence will be?
>
> MR. LAMARCO: No, Your Honor.
>
> THE COURT: Understand that it is a lawyer's job to give you an estimate, tell you what he thinks might happen. But there's a big difference between an estimate and a promise. Do you understand that?
>
> MR. LAMARCO: Yes, Your Honor.

(Plea Tr. 23:11-23:15, 25:9-25:16.) Accordingly, the Petitioner's claim that he was certain he would receive probation is directly contradicted by his guilty plea allocution.

The Court is guided by the Second Circuit's prior decisions that an ineffective assistance of counsel claim will not succeed when an attorney predicts an incorrect sentence where a petitioner was informed by the court of the sentencing range he faced and the petitioner knowingly and freely proceeded with the plea. See United States v. Sweeney, 878 F.2d 68, 69-70 (2d Cir. 1989). Ultimately, individuals "may not plead guilty in order to test whether they will get an acceptably lenient sentence." Id. at 70.

Therefore, even if this Court was convinced that counsel misadvised the Petitioner in some way regarding his potential sentence, this error was cured by the Court's thorough questioning of the Petitioner throughout the plea allocution and the fact that the potential sentences were laid out in the Plea Agreement and in the allocution.  See Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992) (citing Hunter v. Fogg, 616 F.2d 55, 58 (2d Cir. 1980)) (defense counsel's inaccurate representation of the potential sentence was cured by a court's plea allocution and the thorough explanation of the terms of a plea agreement).  In sum, the Court finds that the Petitioner's claim that he received ineffective assistance of counsel because he was misinformed about his sentence is without merit considering the allocution in the underlying record.

### 3.  As to the Post-Plea Claims

The Petitioner claims that his attorney provided ineffective assistance of counsel surrounding his guilty plea and sentence, arguing that he "[f]ailed to correct loss calculations, . . . failed to correct number of victims . . . and [a]llowed patent misstatement of fact to be spread on the record."  (Pet at 4.)  These alleged misstatements of fact made by the Government during sentencing include that the Petitioner "took $30,000.00 from the accounts and that he convinced [an investor] to drain the equity in his house in order to put more money in the pool."  (See Pet.r.'s Memo. of Law at 10.)  In the Petitioner's view, these alleged errors enhanced his sentence and amount to ineffective assistance of counsel.  The Court finds that these sentencing arguments are barred by the valid appeal waiver.  However, reaching the merits of the claims, they are denied in their entirety.

As to the Petitioner's contention that the number of victims should be ten and not thirteen, not only is this conclusory and contradicted by his concessions in the Plea Agreement,

but it does not change the Sentencing Guidelines enhancements.  As recorded in the Plea

Agreement, the Petitioner received a two-point enhancement for ten or more victims.  (<u>See</u> Plea

Agmt. ¶ 2, <u>see also</u> U.S.S.G. § 2B1.1(b)(2)(A)(i)).  Even with ten victims, the Petitioner's

sentencing enhancement would remain the same; therefore, failing to challenge this enhancement

does not constitute deficient performance on the part of his attorney.

Further, the Petitioner claims that his loss value was incorrect and should be a value less

than $400,000, resulting in a two points Sentencing Guidelines reduction from the current value.

First, the Petitioner consented to the current loss value in his signed Plea Agreement and

admitted to this loss amount during his plea allocution.  (<u>See</u> Plea Agmt. ¶ 2; <u>see also</u> Plea Tr.

27:18-27:22 ("THE COURT: I do have one question which is the $862,000 number we've been

throwing around.  Do you believe or know that to be a reasonable estimate of the losses that were

caused?  MR. LAMARCO: Yes, Your Honor.").)  Accordingly, an "attorney's decision not to

challenge the [sentencing] enhancements, which were explicitly included in the [Plea]

Agreement's sentence calculation and based on facts [a petitioner] has admitted, was objectively

reasonable."  <u>United States v. Jin Chen</u>, Nos. 03 Cr. 567(DC), 09 Civ. 10278(DC), 2011 WL

5865732, at *5 (S.D.N.Y. Nov. 22, 2011).

Though the Court is convinced that the abovementioned contentions regarding the

Petitioner's sentencing enhancement do not constitute an objectively deficient representation, the

Court certainly finds that the Petitioner has not shown prejudice resulting from the errors.

"Counsel's failure to challenge a sentencing enhancement, even if that enhancement is incorrect,

is not prejudicial unless it increases the defendant's sentence."  <u>Jin Chen</u>, 2011 WL 5865732, at

*6.  The Court does not agree that any of the alleged errors increased the Petitioner's sentence.

The Court emphasizes that the Petitioner received a considerably below Sentencing Guidelines

sentence of forty-two months of imprisonment and the Petitioner has not established that but for these sentencing enhancements that his sentence would be lower still. In addition, the Petitioner was facing thirty years of imprisonment if convicted at trial and given the totality of the circumstances "'no prejudice exists when a plea agreement lessens the severity of the sentence defendant would face if convicted at trial.'" Padilla v. Keane, 331 F. Supp. 2d 209, 217 (S.D.N.Y. 2004) (quoting Feliz v. United States, Nos. 01 Civ. 5544(JFK), 00 CR 53(JFK), 2002 WL 1964347, at *7 (S.D.N.Y. Aug. 22, 2002)).

As a separate matter, the Court notes that attached to the Petition are documents signed by victims of the Petitioner's scheme, stating that they do not want the Petitioner to continue to serve his incarceratory sentence. However, notably their priority is receiving their restitution payments in an expeditious manner. The Court acknowledges the concerns of these victims and has reviewed the submissions in their entirety. As previously mentioned, there is a restitution order in place, ordering the Petitioner to pay the victims a restitution amount of $862,000. The victims' request for a changed prison sentence does not establish that the Petitioner is entitled to habeas relief under Section 2255. As is discussed in this order, Section 2255 permits relief only when it is established that relief is mandated due to "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks and citations omitted).

**E. As to Actual Innocence**

The Petitioner also claims that he is entitled to Section 2255 relief as he is actually innocent of the crimes he plead guilty to, in that: (1) he "did not possess the requisite capacity to be held accountable [ ] as he was in a constant depression and was suicidal"; (2) he "never

intended to defraud anyone and never diverted, stole, misappropriated, or misused funds"; and (3) he "did not employ any artifice to solicit contributions, nor did he misrepresent the facts at the time other people joined the pool."  (Pet. at 6.)

Generally, a claim of "[a]ctual innocence falls under the 'miscarriage of justice' exception to procedural bars on collateral attack."  Abrams v. United States, No. 11-CV-672(ENV), 2012 WL 4086765, at *9 (E.D.N.Y. Sept. 17, 2012) (quoting Doe v. Menefee, 391 F.3d 147, 160 (2d Cir. 2004)).  The Supreme Court has clarified that the actual innocence exception applies "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'"  McQuiggin v. Perkins, 569 U.S. 383, 401, 133 S. Ct. 1924, 1936, 185 L. Ed. 2d 1019 (2013) (quoting Schlup v. Delo, 513 U.S. 298, 316, 115 S. Ct. 851, 861, 130 L. Ed. 2d 808 (1995)).  A claim of actual innocence is generally a "gateway claim through which an accompanying constitutional claim, otherwise procedurally barred, may be heard."  Abrams, 2012 WL 4086765 at *9.

Ultimately, to succeed on this gateway type of actual innocence claim a petitioner must clear a high hurdle, demonstrating that the claim is "both 'credible' and 'compelling.'"  Rivas v. Fischer, 687 F.3d 514, 541 (2d Cir. 2012) (quoting House v. Bell, 547 U.S. 518, 521, 538, 126 S. Ct. 2064, 2068, 2077, 165 L. Ed. 2d 1 (2006)).   A claim is "credible" if it is "supported by 'new reliable evidence . . . that was not presented at trial.'"  Id. (quoting Schlup, 513 U.S. at 324, 115 S. Ct. at 865).  "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt . . . .'"  Id. (quoting House, 547 U.S. at 538, 126 S. Ct. at 2077).  Assuming that a freestanding claim of actual innocence is cognizable in this context, "the threshold showing"

for such a claim "would necessarily be extraordinarily high." Herrera v. Collins, 506 U.S. 390, 417, 133 S. Ct. 853, 869, 122 L. Ed. 2d 203 (1993). Such a claim would "at the least . . . require [ ] more convincing proof of innocence than" what is demanded from a procedural gateway claim of actual innocence. House, 547 U.S. at 555, 126 S. Ct. at 2087. Of importance, the Court notes that "[c]ourts are especially reluctant to overturn a conviction based on new evidence when the conviction stemmed from a guilty plea.' Jenkins v. United States, Nos. 11-CR-0633(WHP), 13-CV-0195(WHP), 2013 WL 6869649, at *3 (S.D.N.Y. Dec. 31, 2013)

Whether analyzed as a freestanding actual innocence claim or one tethered to an independent constitutional claim, the Petitioner's claims of actual innocence must fail.

With regard to the Petitioner's claims that he "never intended to defraud anyone [ ], never diverted, stole, misappropriated, or misused funds" and that he "did not employ any artifice to solicit contributions, nor did he misrepresent the facts at the time other people joined the pool," these statements are directly contradicted by the Petitioner's plea allocution. (See Pet. at 6.)

First, during the plea proceedings, the Court made certain that the Petitioner understood the elements of both crimes he was pleading to and that the Government had to prove these elements beyond a reasonable doubt for him to be convicted at trial. For example, when discussing the wire fraud charges, the Government stated on the record that it was their burden to prove "that there was a scheme or artifice to defraud or obtain money or property by materially false and fraudulent pretenses representations, or promises" and that the Petitioner "knowingly and willfully participated in this scheme or artifice to defraud with knowledge of its fraudulent nature and with the specific intent to defraud." (Plea Tr. 18:12-18:18.)

Further, the Petitioner, while under oath, admitted to his criminal conduct, stating in pertinent part that he "knowingly and intentionally devised a scheme to defraud investors and to

obtain money from them by means of materially false and fraudulent pretenses and representations." (Plea Tr. 26:3-26:22.) Thus, the Court rejects the Petitioner's self-serving claims that he did not commit the crimes as previously admitted or that he did not intent to do so. As previously stated, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge, 431 U.S. at 74, 97 S. Ct. at 1629.

Within the Petitioner's claim of actual innocence, he claims that he may have not been mentally competent to enter a guilty plea, stating that he was "suffering from a complete psychological breakdown and obsessed with the thought of suicide, [he] may have lacked the requisite mental capacity to be criminally responsible and is therefore 'actually innocent.'" (Pet.r.'s Memo. of Law at 3.)

It is clear that one "may not be tried unless he is competent . . . and he may not waive his right to counsel or plead guilty unless he does so competently and intelligently. Godinez v. Moran, 509 U.S. 389, 396, 113 S. Ct. 2680, 2685, 125 L. Ed. 2d 321 (1993) (internal quotation marks and citations omitted). The Supreme Court has explained that when courts determine competence they consider "whether [a petitioner] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - - and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402, 80 S. Ct. 788, 789, 4 L. Ed. 2d 824 (1960) (per curiam). Crucially, "some degree of mental illness cannot be equated with incompetence to stand trial." United States v. Vamos, 797 F.2d 1146, 1150 (2d Cir. 1986). Findings of incompetence "may include prior medical opinions

on [ ] competence to stand trial or plead guilty, [ ] demeanor in court, and [ ] irrational behavior." Williams v. Coughlin, 664 F. Supp. 665, 667 (E.D.N.Y. 1987).

Ultimately, the Petitioner provides no evidence of mental illness and his argument that he "may have lacked the requisite mental capacity" due to his mental state is insufficient to invalidate his guilty plea. (See Pet.r.'s Memo. of Law at 3.) Rather, upon review of the underlying record there is no indication that the Petitioner lacked the competence to enter a plea. Throughout the plea proceeding the Petitioner confirmed that he understood what was occurring and the Court took multiple steps to ensure that the Petitioner was of sound mind to proceed with a plea. Accordingly, the Court cannot find that the Petitioner "did not possess the requisite capacity to be held accountable." (See Pet. at 6.)

**F. As to an Evidentiary Hearing**

Though the Petitioner requests an evidentiary hearing to address his claims, the Court declines to grant this request. An evidentiary hearing is not required where "the motion and the files of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Given the lack of any meritorious allegations and that the record includes detailed submissions from the Petitioner and former trial counsel regarding the representation at issue, the Court exercises its discretion and finds that an evidentiary hearing is unnecessary to resolve the Petitioner's claims.

### III. CONCLUSION

The Petitioner's motions to vacate his conviction and sentence (Dkt. No. 28) and request for an evidentiary hearing (Dkt. No. 40) are DENIED. The Court declines to issue a certificate of appealability because the Petitioner has not made a substantial showing that he was denied a constitutional right. See 28 U.S.C. § 2253(c)(2). The Court certifies that any appeal of this

Order would not be taken in good faith, and thus in forma pauperis status is denied for the purposes of any appeal.  Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 921, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is respectfully directed to mail a copy of this Order to the Petitioner at his place of incarceration, and upon attorney Robert J. Del Col, Esq., and close this case.


**SO ORDERED.**
Dated: Central Islip, New York
October 5 , 2018

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge
